**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERT E. CARPENTER, | ) | CASE NO. 1:16-cv-3059 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Albert Eugene Carpenter (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

On March 6, 2014, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of January 15, 2006.[1] (Transcript ("Tr.") 184-193). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 141-159). Plaintiff participated in the hearing on October 1, 2015, was represented by counsel, and testified. (Tr. 40-100). A vocational expert ("VE") also participated and testified. *Id.* On November 4, 2015, the ALJ found Plaintiff not disabled. (Tr. 33). On November 10, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On December 22, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 13).

Plaintiff asserts the following assignment of error: (1) the ALJ's assessment of opinion evidence from medical sources did not comport with the regulations and Sixth Circuit precedent. (R. 10).

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in October of 1964 and was 49-years-old on the amended alleged disability onset date. (Tr. 43, 184). He has a degree in business management from Malone University. (Tr. 53-54). He had past relevant work as a data center operator, bulk loader, box maker, cold food packer, ladle handler, packager, and assistant pastor. (Tr. 30).

---

[1] Prior to the hearing, Plaintiff amended his alleged onset date to October 8, 2014. (Tr. 43).

**B. Relevant Medical Evidence**[2]

    **1. Treatment Records**

On December 20, 2011, Plaintiff was seen at the Care Alliance Center complaining of left hip pain and requesting pain medication and vitamins. (Tr. 277). He reported a history of right hip replacement 10 years earlier. *Id*. He was given Ibuprofen 800mg to take as needed. (Tr. 278).

On May 6, 2014, Plaintiff reported 7/10 pain located in both hips of intermittent frequency. (Tr. 296).

On June 30, 2015, Plaintiff was seen by James Brown, M.D., and diagnosed with hypertension, chronic allergic conjunctivitis, and primary osteoarthritis involving multiple joints for which he was prescribed Naproxen. (Tr. 275-276).

On September 14, 2015, an x-ray of Plaintiff's knees yielded an impression of marked patellofemoral compartment degenerative arthritis in the left knee and mild to moderate lateral compartment degenerative arthritis in both knees. (Tr. 282). On the same date, an x-ray of Plaintiff's lumbar spine revealed mild degenerative disc disease at L4-5, mild facet degenerative changes at L5-S1, and no acute abnormality. (Tr. 284).

    **2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On April 22, 2014, at the request of the Agency, Plaintiff was seen by Dorothy Bradford, M.D. (Tr. 267-274). Manual muscle testing yielded normal results in all areas save for reductions in hip flexion, extension, and rotation. (Tr. 267-270). On examination, Plaintiff's station and posture were normal, gait was normal, and Plaintiff did not use an ambulatory aid. (Tr. 273).

---

[2]  Although the medical evidence of record is rather sparse, the recitation of the evidence is, nevertheless, not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs *and* also deemed significant by the court to the assignment of error raised.

Examination of his lower extremities bilaterally revealed "No misalignment, tenderness or masses, normal stability, normal strength and tone. Decreased ROM at both hips more on the right." *Id*. Dr. Bradford's assessment stated: "Claimant had a right TKR in 2000 and now alleges repeat pain with weight bearing for the past year along with left hip pain. He has not sought medical attention. On exam today he does have mildly decreased ROM in both hips with pain. His gait is normal." (Tr. 274). Dr. Bradford opined this exam supported "possible [degenerative joint disease] of both hips" and that Plaintiff "should not stand or walk for more than 30 minutes continuously." *Id*. A radiology report signed the next day by R. Firdaus, M.D., and addressed to Dr. Bradford states: "There is a total hip prosthesis which is maintained in satisfactory alignment and position. No complications are seen. Incidentally noted are some degenerative changes in the sacroiliac joint." (Tr. 266).

On May 1, 2014, State Agency non-examining physician Gerald M. Klyop, M.D., reviewed the evidence of record, including Dr. Bradford's above examination. (Tr. 105-106). Dr. Klyop found Plaintiff only partially credible. (Tr. 105). While acknowledging Plaintiff's prior joint replacement, he noted the lack of any evidence of arthritis around the reconstructed joint. *Id*. Dr. Klyop also noted Plaintiff had some limited range of motion and reported pain, but contrasted this with Plaintiff' normal gait and Plaintiff's acknowledged lack of any pain treatment for his hips in the last ten years and reliance on over-the-counter medications to combat discomfort. (Tr. 105). Dr. Klyop also opined that Dr. Bradford's opinion should be ascribed only limited weight because "it is unclear why she felt he could stand/walk in 30 minute increments as the clt reported only 10 min tolerance and she does not provide any explanation as to the total amount of time in a day the clt can bear weight." *Id*. Dr. Klyop pointed to the largely normal objective manual muscle testing that, "[a]side from some ROM deficit in the hip, clt does not show any

weakness or gait disturbance which would support the degree of limitation opined." *Id*. Dr. Klyop opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours and sit for 6 hours in an 8-hour workday, should avoid heavier lifting, could frequently kneel and crouch, and could occasionally climb and crawl. (Tr. 105-106).

On July 18, 2014, State Agency non-examining physician Diane Manos, M.D., also reviewed the evidence of record, including Dr. Bradford's above examination. (Tr. 124-127). Dr. Manos's findings are in agreement with those of Dr. Klyop above. *Id*. She too found Plaintiff only partially credible noting his lack of treatment, took issue with Dr. Bradford's opinion given the lack of any explanation or supporting evidence, and assessed identical lifting/carrying, standing/walking and sitting restrictions as Dr. Klyop. (Tr. 125-126).

On September 14, 2015, Plaintiff was seen by George F. Muschler, M.D., an orthopaedic surgeon.[3] (Tr. 286-295). Dr. Muschler noted Plaintiff walked with a limp suggesting discomfort in the left lower extremity. (Tr. 289). Dr. Muschler stated "[p]ain limits both flexion and internal and external rotation [in the left hip] consistent with degenerative arthritis seen on radiographs." (Tr. 289). With respect to the right hip, Dr. Muschler stated "[w]ell-functioning hip with respect to range of motion. Pain is reported only after prolonged standing and weight bearing, consistent with possible early aseptic loosening of the femoral complement associated with polyethylene wear." (Tr. 289-290). Dr. Muschler diagnosed Plaintiff with the following: left hip degenerative osteoarthritis, moderate with pain limiting physical activities but not sufficient to justify intervention with hip arthroplasty at present; right hip 16 years status post-surgery with pain, possible aseptic loosening but pain not sufficient to justify intervention with revision arthroplasty

---

[3] Plaintiff indicated in another treatment note that it was Dr. Muschler who had performed a right hip replacement in 1999. (Tr. 301).

at present; degenerative arthritis of both knees, symptoms slightly worse on the left; high blood pressure, controlled with medication; right ankle osteoarthritis; right Achilles tendinosis; low back pain consistent with mild facet arthropathy without any evidence of radiculopathy; bilateral chronic knee pain, likely secondary to degenerative osteoarthritis. (Tr. 290). Radiographs and imaging studies were ordered. (Tr. 291). With respect to exercise and activity, Dr. Muschler stated as follows:

> Standing and walking greater than 4 hours and in the lower day as well as frequent stair climbing, ladders, scaffold, crawling, kneeling are significant the [sic] limited by his combination of bilateral hip and bilateral knee pathology. This limits him from aggressive physical activities involving the lower extremities. He is capable of working in an office setting where stairclimbing is minimized and lifting and carrying activities are occasional. There is no limitation and upper extremity activities.
>
> A regular walking program to maintain physical thickness is encouraged. Cross training with an exercise bicycle, treadmill, and even stair master is encouraged to the limits of tolerance, provided he does not suffer the following day for exercise performed during the current day.

(Tr. 291). Dr. Muschler also found that physical therapy was "not necessary at this time," and opined that home exercise was sufficient. *Id*.

## C. Relevant Hearing Testimony

At the October 1, 2015 hearing, Plaintiff testified as follows:

- He is 6'4" and weighs 220 pounds. (Tr. 47). He is left handed. *Id*.

- His driver's license was suspended two years earlier. (Tr. 51). He is able to take public transportation. (Tr. 52).

- He lives in a ministry house with two friends supported by donations, receives food stamps, and has health insurance. (Tr. 48).

- He was convicted of theft in 2009. He has a history of prior crack cocaine and alcohol abuse. (Tr. 52-53).

- He has not performed any work for pay or profit since his amended onset date. (Tr. 54).

- His last full-time job was in 2014 coring aluminum. (Tr. 56-57). He was unable to continue after a few weeks because of the stress on his hips, back, and knees from standing all day. (Tr. 57-59).

- He previously worked as an assistant pastor full-time for three years. (Tr. 65-66).

- He stated that he cannot work because at the end of a workday he could barely walk and was in excruciating pain. (Tr. 73). He was prescribed Ibuprofen for pain. (Tr. 80).

- He was holding off on surgery until the pain became unbearable. His doctor told him he could walk, but he was limited in how many miles he could walk. (Tr. 81). When the ALJ asked him if his doctor ever told him that he should not stand for 6 hours in an 8-hour workday, he responded that his doctor would prefer he perform a sitting job. (Tr. 81-82).

The ALJ posed the following hypothetical question to the VE:

> [F]or the first hypothetical please consider an individual with the same age, education, past work as Mr. Carpenter who's capable of performing light exertional work subjection [sic] to the following, he can lift and or carry 20 pounds occasionally, 10 pounds frequently, he can sit, stand or walk for six hours each per eight hour work day. He occasionally climb ramps and stairs and balance, stoop, kneel, crouch and crawl but he cannot climb ladders, ropes, or scaffolds.
>
> This individual must avoid hazards such as unprotected heights and moving mechanical machinery and he cannot perform commercial driving. This person can tolerate, let's see. This person cannot be exposed to slippery, uneven, and, or vibrating surfaces.

(Tr. 92-93).

The VE testified that such an individual could not perform any of Plaintiff's past work save for the assistant pastor job. (Tr. 93). However, the VE identified the following jobs that such an individual could perform: merchandise marker, Dictionary of Occupational Titles ("DOT") 209587034, light and unskilled with an SVP of 2 (280,000 jobs nationally, 11,000 in Ohio); cashier II, DOT 211462010, light and unskilled with an SVP of 2 (800,000 jobs nationally, 15,000 in Ohio); and, mail room clerk, DOT 209687026, light and unskilled with an SVP of 2

(105,000 jobs nationally, 600 in Ohio). (Tr. 94).

The ALJ posed a second hypothetical asking the VE to assume the same limitations as the first hypothetical but indicating that said individual could sit for 6 hours in an 8-hour workday and reduced standing/walking to 4 hours. (Tr. 94). The VE responded as follows:

> It's possible the assistant pastor depending on what duties are assigned. It could be performed under this condition and then the jobs that I sited [sic] for hypothetical 1, the cashier in the mail room could be done under this condition. The cashier would have reduced numbers. The numbers would be reduced to those cashiers whose employers don't consider a stool at the cashier work station [a] work accommodation that leaves us with [187,000] in the nation and 6800 in the state. So those are two light jobs that could be done under the conditions. In the hypothetical which is actually a sedentary RFC.

(Tr. 94-95). The VE further testified that employers would tolerate an average of a day or less of absenteeism each month over a 12-month span, and a person who was off-task 15 percent of the time would be unemployable. (Tr. 95).

In response to questions from Plaintiff's counsel, the VE reiterated her testimony that the second hypothetical posed by the ALJ was a sedentary RFC, but that there were some light jobs that could be performed under those conditions. (Tr. 96).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since October 8, 2014, the alleged onset date (20 CFR 404.1571 *et se*q., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: degenerative joint disease of the bilateral hips status-post total hip replacement of right hip in 1999, degenerative disc disease of the lumbosacral spine, degenerative joint disease of the bilateral knees, degenerative joint disease of the right ankle, and tendinosis of the right Achilles tendon (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work with the following additional limitations (see generally 20 CFR 404.1567(h) and 416.967(h)). He can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, or walk for 6 hours each in an eight-hour workday. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. He must avoid hazards, such as unprotected heights and moving mechanical machinery. He cannot perform commercial driving. He cannot be exposed to slippery, uneven, or vibrating surfaces.

6.    The claimant is capable of performing past relevant work as an assistant pastor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 8, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 21-33).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a

whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.   Plaintiff's Assignments of Error**

### 1. Weight Ascribed to Medical Source Opinions

In the first and only assignment of error, Plaintiff asserts that the ALJ failed to give good reasons for not adopting restrictions contained in the opinions of Dr. Bradford and Dr. Muschler. (R. 10, PageID# 358-368). Specifically, Plaintiff avers that the standing/walking limitations assessed by Drs. Bradford and Muschler should have been credited and incorporated into an RFC that limited him to sedentary work. *Id.* Plaintiff proceeds to cite regulations as well as Sixth Circuit precedent that discuss the weight to be accorded to the opinions of *treating sources*. (R. 10, PageID# 358-359, citing 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710

F.3d 365, 376 (6th Cir. 2013); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)).[4]

Plaintiff invokes the wrong standard with respect to the opinions of the aforementioned medical sources. First, Dr. Bradford, as Plaintiff's brief and the record makes clear, is not a treating source but a one-time, consultative examiner. (R. 10, PageID# 359). In addition, the court further finds Dr. Muschler did not qualify as a "treating source," as defined by the regulations, at the time he rendered his opinion during a single examination. One documented visit to Dr. Muschler since the original alleged onset date back in 2006 does not establish the kind of longitudinal relationship that underpins the deference accorded to treating physician's opinions. *See* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2) ("we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a *detailed*, *longitudinal* picture of your medical impairment(s)") (emphasis added).

The court bases this determination on a similar decision in *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005), where the Sixth Circuit found as follows:

> Daniels next argues that Dr. Pinson's opinion was not afforded deference by the ALJ…. Dr. Pinson testified that she treated Daniels on two occasions…. The ALJ's opinion referred, in passing, to Dr. Pinson as a treating source or treating physician, thus adopting Daniels's own characterization of Dr. Pinson…. We

---

[4] "Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5).

conclude that the treating source regulations and *Wilson* are not implicated by the facts of this case. The ALJ's failure to specifically address Dr. Pinson's opinion, despite casually referring to her as the treating source, is not surprising given that ***Dr. Pinson does not meet the criteria under the regulations to be defined as a treating physician***. The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. The Commissioner will consider a claimant to have an ongoing treatment relationship when "the medical evidence establishes that [the claimant] see[s], or has seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* A physician who has treated a patient only a few times may be considered a treating source if that frequency of visits is appropriate for the claimant's medical condition. *Id.* In this case, Dr. Pinson saw Daniels on two occasions, November 13, 2001, and November 16, 2001.… Daniels's two visits to Dr. Pinson within the span of a few days is not a frequency consistent with the treatment of back pain, as evidenced by the fact that he received treatment from other sources on many other occasions.

*Daniels*, 152 Fed. App'x at 489-91 (footnotes omitted) (emphasis added). The pertinent issue is whether there was an on-going relationship to qualify as a treating physician, and "two or three visits often will not suffice for an ongoing treatment relationship[,]" with some possible exceptions depending on the circumstances and nature of the person's underlying medical condition. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507 (6th Cir. 2006); *Hickman v. Colvin*, No. 1:13cv00089, 2014 WL 2765670 at *12 (M.D. Tenn. June 18, 2014) ("Precedent in this Circuit suggests that a physician who treats an individual only twice or three times does not constitute a treating source."); *see also Taylor v. Astrue*, 245 Fed. App'x 387, 391 (5th Cir. 2007) (two visits to doctor did not establish a treating relationship).

According to a treatment note from Yvonne C. Yen dated May 6, 2014, Plaintiff wanted to see Dr. Muschler, who apparently performed Plaintiff's hip replacement surgery in 1999. (Tr. 301). However, the record before the court fails to demonstrate that Dr. Muschler had continued to see Plaintiff since the conclusion of his treatment related to the distant hip surgery. Notably,

Plaintiff's brief does not cite any treatment in the record by Dr. Muschler aside from the isolated examination occurring on September 14, 2015, which contains the disputed opinion concerning Plaintiff's ability to stand/walk. This court's own review of the record failed to yield any evidence of any prior treatment aside from the surgery in 1999 or 2000. In fact, in a disability form completed by Plaintiff, he indicated that he first saw Dr. Muschler in 2000 and last saw him in 2001. (Tr. 235, 238). Thus, it appears Dr. Muschler had not seen Plaintiff over a fourteen to fifteen year period before finally seeing him again in September of 2015. Therefore, any longitudinal treatment relationship that may have previously existed between Plaintiff and Dr. Muschler prior to 2001 had long ago ceased to exist when the examination in question occurred on September 14, 2015. After such a lengthy passage of time, the court concludes it would be inherently unreasonable to consider Dr. Muschler a "treating source."[5] Therefore, the rules that apply to treating sources—and the accompanying requirement that "good reasons" be given for the weight ascribed to their opinions—are inapplicable.

The opinion of a non-treating but examining source, such as the opinion of Dr. Muschler or Dr. Bradford, is *not* subject to the rigors of the treating physician rule. Other courts have determined that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir.

---

[5] Although the ALJ made an isolated reference to Dr. Muschler's "treating source opinion," earlier in the decision the ALJ identified Dr. Muschler as an "examining" surgeon. (Tr. 24-25, 29). The court declines to find Dr. Muschler's opinion was entitled to the same deference as a treating source based on one examination after a 14 to 15 year treatment hiatus. The Sixth Circuit in *Daniels*, quoted above, also found that the treating source rule was not implicated despite an ALJ's passing reference to a physician as a treating source. 152 Fed. App'x at 489-491.

2006); *accord* *Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). While a claimant may disagree with the ALJ's explanation as to why little weight was assigned to a non-treating medical source, such a disagreement with the ALJ's rationale does not provide a basis for remand. *See, e.g.*, *Steed v. Colvin*, 2016 WL 4479485 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.).

Instead, an ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also* *Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and *explain* why he did not include their limitations in his determination of Plaintiff's RFC") (emphasis added).

The ALJ addressed Dr. Bradford's opinion from April 22, 2014, as follows:

> Functionally, Dr. Bradford opined that the "exam[ination] does support possible degenerative joint disease of both hips and he should stand or walk for more than thirty minutes continuously" (Exh. 3F, p. 8) [Tr. 274]. I give less weight to the longitudinal relevance of Dr. Bradford's functional assessment for the following reason. Although the claimant has reported hip pain symptoms in his hips since approximately 2013, the evidence indicates that he has sporadically used over-the-counter pain medication without any targeted longitudinal history of medical treatment, such as narcotic/non-narcotic prescription pain relievers, steroid injections, or even additional surgical intervention. I note that he was prescribed prescription-strength ibuprofen on December 20, 2011, but he did not receive any follow-up treatment until June 30, 2015, when examining physician James Brown, M.D., prescribed him Naproxen (Exh. 4F, pp. 1, 3) [Tr. 275, 277]. Moreover, the claimant has not required the use of an ambulatory aid but he has

been able to play basketball at least once in 2014 (Exh. 4F; 5F; 6F; *but see* Exh. 5F, p. 7) [Tr. 275-304, *but see* Tr. 286]. Additionally, the claimant has engaged in non-substantial gainful work activity in 2013 at the reported medium exertional (consider Exh. 6D; claimant's testimony) [Tr. 296-304]. On September 14, 2015, the claimant reported to Dr. Muschler that "until past few months, he worked for the City of Cleveland as a meter reader and waste management associate" (Exh. 5F, p. 9) [Tr. 288]. Accordingly, I give less weight to Dr. Bradford's functional assessment.

(Tr. 26).

In addition, the ALJ addressed Dr. Muschler's September 14, 2015 opinion as follows:

Dr. Muschler opined that the claimant had "moderate functional limitations secondary to pain in his left hip but the medical evidence was "not sufficient to justify intervention with hip arthroplasty at present" (Exh. 5F, p. 11). Similarly, regarding the right hip, Dr. Muschler opined that the claimant's pain symptoms were "not sufficient to justify intervention with revision arthroplasty at present" (Exh. 5F, p. 11).

                                    ***

Based on his examination of the claimant's knees and right ankle, Dr. Muschler opined that the claimant had "slightly worse" symptoms in his left knee than right but he did not recommend any targeted treatment aside from exercise and over-the-counter pain medications (Exh. 5F, p. 11). Similarly, although he diagnosed the claimant with right ankle osteoarthritis and tendinosis, he recommended only conservative treatment (Exh. 5F, p. 11).

Although I will discuss Dr. Muschler's functional assessment in more detail below, I note that Dr. Muschler opined that the claimant's physical impairment did not preclude him from 'working in an office setting where stairclimbing [was] minimized and lifting and carrying activities [were] occasional" (Exh.5F, p. 12).

                                    ***

First, I find that the recent radiological evidence and Dr. Muschler's treating source opinion is not consistent with his very conservative treatment recommendations (Exh. 5F). Similarly, I find Dr. Bradford's opinion that the claimant cannot perform prolonged standing and walking activities are not consistent with her generally normal objective findings and the claimant's admission that he had not received any targeted medical treatment for his alleged progressive pain symptoms over the last year (Exh. 3F).

Second, I find that Dr. Bradford's and Dr. Muschler's functional assessments do not reflect the fact that the claimant has been able to perform various essential and

nonessential activities of daily living without an ambulatory aid, such as working as a laborer at non-SGA levels prior to his amended onset date but after his alleged onset date, playing basketball, performing household chores in his two-story home, preparing meals to maintain his muscular physical condition, and maintaining his personal hygiene effectively and independently without any longitudinal medical intervention for his pain symptoms (Exhs. 2F; 3F, pp. 1-2, S, 8; 4; SF; 6F). Thus, I do not agree with Counsel's assertion that Dr. Muschler and Dr. Bradford's assessments support a sedentary residual functional capacity. Instead, I find that the claimant's allegations of disabling functional limitations are not wholly credible and the record does not establish limitations greater than a reduced range of sedentary[6] work.

(Tr. 26-27, 29).

The decision more than adequately explains why the ALJ did not adopt and incorporate Dr. Bradford's and Dr. Muschler's limitations into the RFC. The explanation requirement applicable to examining, but non-treating sources is not as rigorous as the good reasons requirement of the treating physician rule. *See, e.g., Moscorelli v. Colvin*, No. 1:15cv1509, 2016 WL 4486851 at **3-4 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (observing that a thin explanation that would not constitute a good reason for discounting a treating source's opinion may, nevertheless, satisfy the explanation requirement for a non-treating source). First, the ALJ explained that the alleged limitations, based on Plaintiff's reports of pain, were inconsistent with the Plaintiff's long periods of no treatment and the physicians' conservative treatment recommendations. (Tr. 26, 29-30). "[W]hen a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 846 (6th Cir. 2004); *see also Ashworth v. Sullivan*, 951 F.2d 348 (6th Cir. 1991) (finding the claimant's "sporadic and conservative treatment, and her demeanor before the ALJ all weigh

_____

[6] This appears to be a typographical error, as the ALJ found Plaintiff had the capacity to perform a reduced range of light work. (Tr. 28).

heavily against the doctors' reports").

Plaintiff's brief takes issue with the significance the ALJ ascribed to Plaintiff's lack of significant treatment, as well as with ALJ's discussion of Plaintiff's activities and essentially offers a rebuttal to the ALJ's interpretation of the evidence. (R. 10, PageID# 365-368). Plaintiff, however, does not identify any factual inaccuracy in the ALJ's discussion of the evidence. Thus, Plaintiff's argument is tantamount to an invitation for this court to reweigh the evidence and to specifically find that the ALJ should have come to a different conclusion with respect to the weight ascribed to the disputed medical source opinions. However, this court's role in considering a social security appeal does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681. Following the aforementioned precedent, this court declines to reweigh the evidence and make a *de novo* determination that an examining medical source's opinion should have been credited over a non-examining physician's opinion.

Second, the ALJ expressly ascribed "considerable weight" to the opinion of State Agency medical consultants Drs. Klyop and Manos. (Tr. 29-30). State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence. 20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e); 416.913a(b)(1); 416.927(e). Although the ALJ generally accords more weight to an examining source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Comm'r*, 594 F.3d 504, 514-515 (6ᵗʰ Cir. 2010); *Smith*, 482 F.3d at 875. Plaintiff suggests that the ALJ erred by ascribing more weight to the non-examining source opinions of Drs. Klyop and Manos than to the examining source opinions of Drs. Bradford and Muschler. (R. 10, PageID# 364). While Plaintiff is correct that more weight is *generally* accorded to examining than non-

examining sources, he cites no law supporting the proposition that an ALJ is prohibited from doing so. Plaintiff's assertion that the ALJ may not assign greater weight to the opinions of the non-examining state agency reviewing physicians is incorrect. "[I]t is not a *per se* error of law, as [claimant] suggests, for the ALJ to credit a nonexamining source over a nontreating source." *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 439 (6th Cir. 2012); *accord Moscorelli*, 2016 WL 4486851 at *3. Similarly, while asserting that Dr. Muschler was a specialist and pointing to the regulations that state more weight is given to a specialist's opinion in an area of his or her specialty, Plaintiff again cites no law suggesting that ascribing more weight to a non-specialist is grounds for remand. (R. 10, PageID# 363-364, *citing* 20 C.F.R. § 404.1527(c)(5)). The ALJ was clearly aware that Dr. Muschler was an orthopaedic surgeon, and referred to him as such in the decision. (Tr. 24-25). As such, there is simply no basis for concluding that the ALJ did not consider this factor merely because it was not reiterated when the ALJ explained why he was assigning Dr. Muschler's opinion concerning Plaintiff's standing/walking abilities less weight.

In a recent decision from the Southern District of Ohio, *Lowther v. Comm'r of Soc. Sec.*, No. 2:15-cv-3010, 2016 WL 7111604 at *7 (S.D. Ohio, Dec. 7, 2016), *adopted by* 2017 WL 25551 (Jan. 2, 2017), the court reasoned that where there was no opinion from a treating source with a longitudinal picture of a claimant's health, each medical source opinion was based on a limited amount of evidence. *Lowther*, 2016 WL 7111604 at *7. The *Lowther* court reasoned that the ALJ's decision to place more weight on the conclusions of a non-examining State Agency consultant, who reviewed the record, than those of two consultative examining psychologists "was within the permissible 'zone of choice' afforded to an ALJ." *Id.* (citations omitted).

This court agrees with the sound reasoning of the *Lowther* decision, and finds that the ALJ did not err by assigning greater weight to the non-examining opinions of Drs. Klyop and Manos,

which were offered more recently than Dr. Bradford's opinion and, according to the ALJ, were more consistent with Plaintiff's limited treatment history. (Tr. 29-30). Although Dr. Muschler's opinion was more recent than the non-examining physicians' opinions, the ALJ's explanation was sufficient. Furthermore, the ALJ was not interpreting raw medical data or playing doctor, as Plaintiff alleges, when assigning greater weight to the State Agency doctors, as it is the responsibility of the ALJ to resolve the conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC). "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389, 399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

In summary, the ALJ adequately explained why he did not adopt the standing/walking restrictions contained in the opinions of two non-treating sources. Therefore, Plaintiff's sole assignment of error is without merit.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 13, 2017

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. **28 U.S.C. § 636(b)(1).** Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**